2026 IL App (1st) 260489

No. 1-26-0489B

June 30, 2026

FIFTH DIVISION

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | 25 CR 7788 |
| | ) | |
| LANCE TALBERT JR., | ) | The Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judges, presiding. |

_____
_____

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion
Presiding Justic Mitchell and Justice Mikva concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant-appellant Lance Talbert Jr., by and through his counsel, the Cook County

public defender, brings this appeal challenging the trial court's orders, entered December 10,

2025, and March 5, 2026. The first order denied defendant's petition for pretrial release, and

the second order denied his "motion for relief," which was filed pursuant to Illinois Supreme

Court Rule 604(h)(2) (eff. Apr. 15, 2024). The rule provides that a "motion for relief" is a

necessary "prerequisite" before a defendant may appeal a trial court's denial of pretrial release

(Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024)), pursuant to what is "commonly known as the Pretrial Fairness Act."[1] *People v. Morgan*, 2025 IL 130626, ¶ 1. The motion, filed in the trial court, must state "the same relief to be sought [later] on appeal and the grounds for such relief." Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024).

¶ 2          On appeal, defendant claims that the trial court erred in denying him pretrial release. The State responds, first, that defendant's motion for relief was insufficient and, thus, this prerequisite was not satisfied, and second, that the trial court was correct to deny defendant pretrial release. For the following reasons, we find that defendant's motion was sufficient but that the trial court did not err in denying him release. Therefore, we affirm.

¶ 3                              I. BACKGROUND

¶ 4          Under case No. 25-CR-0778801, defendant was indicted on July 10, 2025, for (1) two counts of aggravated vehicular hijacking, (2) two counts of armed robbery, (3) aggravated possession of a stolen motor vehicle, (4) possession of a stolen motor vehicle, (5) defacing identification marks of a firearm, (6) five counts of aggravated unlawful possession of a weapon, and (7) aggravated fleeing or attempt to elude a peace officer.

¶ 5          Defendant, who was 20 years old at the time of the offense, was arrested on June 10, 2025, which was just over a month short of his twenty-first birthday. There were five separate felony complaints, all filed on June 11, 2025, which cumulatively alleged that defendant hijacked a Dodge Charger by threatening its two occupants with a Glock pistol, which was loaded, uncased and with a defaced serial number, and that he also took a wallet, purse, and

---

[1]In 2021, the General Assembly passed two separate acts that "dismantled and rebuilt Illinois's statutory framework for the pretrial release of criminal defendants." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 (discussing Public Acts 101-652, § 10-255, 102-1104, § 70 (eff. Jan. 1, 2023) (amending 725 ILCS 5/art. 110)).

phone from the car's occupants. The arrest report, also filed June 11, 2025, stated that the arresting officers were in the area when they heard a broadcast regarding a white "CRV" vehicle that had been used in a robbery spree. The broadcast indicated that an orange Dodge sedan was traveling with the white CRV. Officers tried to initiate a traffic stop, and subsequent broadcasts indicated that "an officer had been dragged" and that the orange Dodge fled. The Dodge eventually crashed into a parked car with defendant fleeing on foot. After defendant was arrested, officers recovered a Glock pistol, with an extended magazine and partially defaced number, from a rear yard where defendant had been seen throwing a firearm. The officers learned that the vehicle, which defendant had been driving, had been taken in an armed vehicular hijacking approximately 10 minutes earlier.

¶ 6        On June 11, 2025, the State filed a petition for pretrial detention that alleged:

"Defendant was armed with a Glock 19 with a defaced serial number and forced victims out of their vehicle at gunpoint and robbed them of their possessions. Defendant has ten (10) prior violent juvenile adjudications, including for Armed Robbery and Aggravated Vehicular Hijacking."

¶ 7        Attached to the State's petition was a four-page typed summary of events and victim statements. The summary indicated that a man and a woman were sitting in the front seats of the man's Dodge, parked outside the woman's residence. The man was in the driver's seat, and the woman was in the front passenger's seat, when defendant and three co-offenders approached. The offenders pointed guns and demanded that the victims exit the car. One offender, who was later identified as defendant, approached the front passenger's seat where the woman was sitting and grabbed at her shirt. When the victims exited, they noticed that the offenders were dressed all in black with "balaclava-style masks," which showed their eyes and

the top part of their faces. After the woman exited the front passenger seat, defendant got "face to face" with her, and she could see his eyes. She had left her purse on the floor with her phone, wallet, and camera inside. A co-offender opened the driver's side door and removed the car keys and wallet from the man's pocket. After the man exited the car, another offender went through his pockets, taking cash, phone, and watch and also punched the man in the face multiple times. One co-offender ran away, while three entered the Dodge and drove off. The woman entered her residence and asked her cousin to call the police. Officers responded to the scene and broadcast the vehicular hijacking of the orange Dodge Charger.

¶ 8 Shortly thereafter, other officers heard the broadcast and observed the orange Dodge Charger traveling with a white vehicle. The officers activated their siren and lights and attempted to affect a stop, but the Dodge fled. A police helicopter joined the pursuit and tracked the vehicle. After the Dodge crashed, defendant fled from the driver's seat. Although three offenders had previously entered the Dodge, only one offender was in it during the pursuit and subsequent crash. As defendant fled, he was observed from the helicopter tossing a firearm into a vacant lot and attempting to hide in a nearby stairwell. However, officers found him and placed him into custody. From the vacant lot, the police recovered a Glock with an extended clip and an obliterated serial number. The police recovered an iPhone from defendant's person, a second one from inside the Dodge, and a third one from near the scene of the hijacking. Later on June 10, 2025, the female victim positively identified defendant from a photo array as the offender who was at her side of the car during the hijacking. She stated that she could identify him by his eyes. However, the male victim when viewing a photo array could say only that the offender was photo No. 2, 4 or 6, but he was not certain. Defendant was photo No. 4.

¶ 9        At the initial pretrial detention hearing, held on June 11, 2025, the assistant state's attorney (ASA) noted that the State had tendered a copy of several documents, including the petition, arrest report, and felony complaints. The ASA then proffered a summary of the facts in these documents, which we already described above. In addition, the ASA noted that defendant did not have a firearm owner's identification card or concealed carry license and that he had 11 juvenile adjudications, 10 of which were for violent offenses. Nine were from the year 2023. Of these nine 2023 offenses, five were for aggravated vehicular hijacking, one was for vehicular hijacking, and three were for armed robbery. The two earlier offenses were a 2022 adjudication for attempted armed robbery and a 2019 adjudication for unlawful possession of a firearm. Defendant was discharged from juvenile parole on March 15, 2025, and less than three months later, on June 10, 2025, the instant offense occurred.

¶ 10       In response, the assistant public defender (APD) argued that defendant was only 20 years old, had graduated from high school, was currently enrolled in a trade-school program, and was the single parent of a two-year old daughter, whose mother was deceased. In addition to caring for his child, defendant lived with his mother, aunt, and siblings and did wellness-checks on his grandfather who had dementia. Defendant did community service and went to church. As for the facts of the case, the APD noted that one of the victims could not definitively pick out defendant from a photo array. Regarding dangerousness, the APD stressed that no gun was discharged and that conditions could mitigate dangerousness, such as curfews, home confinement, and electronic monitoring.

¶ 11       The trial court found, first, that the State had satisfied its burden to show by clear and convincing evidence that defendant did, in fact, commit the offense of aggravated vehicular hijacking, noting, among other things, that the police were in hot pursuit when they caught

defendant and placed him in custody and that he was positively identified by the victim whom defendant had stood next to. Second, the trial court found that defendant posed a real and present threat to the safety of the community, given his numerous prior aggravated vehicular hijackings and armed robberies and the facts of the instant case, which included guns, a car chase, and a crash. Lastly, the trial court found that no combination or combination of conditions could protect the public, in light of "the multiple occasions that [defendant] has committed the same offense that is before the Court here today, the multiple times that he has been told not to commit an offense, not to carry a firearm, and yet, again, we are here with a very serious violent offense." The court found that there was no condition it could set that defendant "would comply with." After ordering pretrial detention, the trial court informed defendant that, if he did not agree with the order, he could "file a motion for relief."

¶ 12        On the same day as the hearing, June 11, 2025, the trial court entered a written order, in which it found, first, that the State had shown by clear and convincing evidence that defendant had committed an eligible offense, where the victims were parked in front of one victim's residence and defendant and co-offenders pointed handguns and demanded that the victims exit the car.

¶ 13        Second, the written order found that defendant posed a real and present threat to the safety of the community, where defendant:

> "brazenly took the V's vehicle & crashed the vehicle while this D as a juvenile is a 20-year-old and has been adjudicated for 11 juve crimes-10 violent offenses. He has been adjudicated of 5 Agg. veh. hijackings & 3-Armed Robberies. This D posesses a real and present threat to these Vs and the community as a whole."

¶ 14        Lastly, the written order found that there were "no conditions that would keep the community safe from this random and very violent act perpetrated upon these victims." The matter was continued to June 17, 2023, when detention was continued and the next court date was set for July 8, 2025.

¶ 15        On December 10, 2025, six months after the initial detention hearing, defendant filed a petition for pretrial release, with three supporting letters attached. The letters were from his sister, his pastor, and his juvenile justice case manager. The petition reiterated the mitigating facts noted previously and observed that defendant had made no admissions and was not found with a gun on his person. On the same day, December 10, 2025, a different trial judge held a hearing and also denied pretrial release.

¶ 16        At the December 2025 hearing, the APD argued that the victims were not harmed, that one of the victims did not identify defendant, that the police did not have continuous sight of the Dodge after the hijacking, and that the helicopter footage showed an individual exiting the driver's seat and throwing an item, but that it was unclear what the item was. The APD further argued that, since the gun was recovered by an evidence technician, there was no body-cam footage of the recovery. The APD observed that no firearm, holster, or ammunition was found on defendant's person and that defendant had made no admissions. The APD noted that the defense had been waiting for six months for the results of DNA testing by the State. The ASA responded that, based on his conversation with the lab at the end of last week, he anticipated a DNA and fingerprint report on the gun to be completed "shortly" and that "[t]he State does anticipate those findings bolstering our case." The trial court followed up by asking if the testing was for DNA, for fingerprints, or for both, and the ASA responded "both, Judge."

¶ 17        In addition to the arguments made by the State at the last hearing, the ASA also argued:

"Electronic monitoring is reactive; it is not proactive. They are not a law enforcement agency. [A]ll they would be able to do, days after the event, would be to inform the Court."

The State argued that defendant would be required by law to receive two days of movement, when he would pose a danger to anyone he comes across inside a vehicle.

¶ 18      The trial court reviewed the facts noting that defendant "tossed something" and that, even without the DNA evidence, the proof was evident and the presumption great, particularly considering a victim identification. In finding dangerousness, the court noted that defendant had been "repeatedly adjudicated" of violent offenses. Withe respect to possible conditions, the trial court found: "There's nothing that indicates to me that he would, in fact, comply with whatever conditions were imposed, based on the long history that was presented." After denying defendant's petition, the trial court informed him that he had the right to appeal the court's decision and, to do so, he would have to "file a written motion." The case was then adjourned to January 2, 2026, when defendant was continued in custody.

¶ 19      On March 5, 2026, defendant filed a motion titled "Motion for Relief Under the Pretrial Fairness Act." The motion asked the trial court, "pursuant to Illinois Supreme Court Rule 604(h)(2), to review its 12-10-2025 decision" denying defendant pretrial release. The motion observed that, on December 10, 2025, the State had represented to the court that the DNA test would be done shortly and had claimed that it would bolster its case. However, the motion noted that, on January 8, 2025, the State had shared discovery that included a "DNA Laboratory Report from the Illinois State Police Forensic Science Center," dated December 9, 2025, and that this report excluded defendant as a contributor to the DNA found on the recovered firearm.

¶ 20    Defendant's motion further alleged that, even though the State had represented to the court that fingerprint testing was being done as well, the State had not tendered the results of any fingerprint testing. Also, the packet provided by the Illinois State Police Forensic Science Center indicated that only a request for DNA testing on the firearm had been made.

¶ 21    Based upon the facts that defendant had been excluded as a DNA contributor to the firearm, that nearly eight months had passed while basic discovery from the State was still outstanding, and that defendant had no adult convictions, defendant asked the trial court to review its prior finding. Further, defendant noted that, as a prerequisite to any appeal, he had to first present to the trial court a written motion requesting the relief he seeks on appeal.

¶ 22    At the hearing on defendant's motion on March 5, 2026, the APD stated that, when the case was last up, she was still waiting for the transcript of the December 10, 2025, hearing. However, now that she had received the transcript, she had filed it with the motion. The hearing on the motion was before the same trial judge who had reviewed the petition on December 10, 2025.

¶ 23    At the March 2025 hearing, the APD stated that she was "predominately" relying on arguments made previously, including that the item thrown "did not appear to be a firearm." She also reminded the court that, at the last hearing, the State had asserted, with respect to the DNA test, that "the results were going to bolster the State's case." However, to the contrary, they now knew that defendant was excluded as a contributor to the DNA on the firearm and that no fingerprint tests had been conducted. The APD argued that this "change in circumstances warrants this reconsideration of his detention."

¶ 24    In response, the State argued that, although "there's no DNA on the gun, the gun that is recovered has an extended magazine which is consistent with the kind of firearms that the

victims in this case observed." The trial court found that, although "at this point in time there's a lack of forensic evidence" to connect defendant to the recovered gun, the presumption was still great that defendant had committed the offense, based on defendant's flight in the hijacked vehicle as recorded by helicopter footage, defendant's toss during his flight on foot of an object that the State believed to be a firearm, his arrest while hiding in a staircase that was not on his own property, and his identification by one of the victims. Second, the trial court found that defendant posed a real danger to others, where he used a gun with an extended magazine to rob the victims, led the police on a car chase, and had 10 adjudications for violent offenses. The court noted that, although some of the adjudications were concurrent pleas, they were still for separate acts. The court acknowledged that "the slow-moving forensic evidence is a concern" but that this did not undercut the fact that defendant was still a danger to the community. Lastly, the court found that no conditions could mitigate the danger where defendant had been off parole for only a few months at the time of this incident. Based on these findings, the trial court denied defendant's motion for release.

¶ 25      The trial court then asked: "Where do we stand now?" The APD responded that she would "seek leave to file our notice of appeal." The State did not claim at that time, as it does on appeal, that defendant's motion for relief was an insufficient motion for relief. The trial court said "Okay," and the matter was continued. After the hearing, the trial court entered an order stating: "Next court date: 03/23/2026 Status Defendant In Custody."[2]

---

[2]While Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024) requires the trial court to "promptly hear and decide the motion for relief," it does not require the trial court to enter another written order. Compare 725 ILCS 5/110-6.1(h)(1) (West 2024) (requiring "a written finding" for the initial detention order "summarizing the court's reasons") with 725 ILCS 5/110-6.1(i-5) (West 2024) (requiring a finding at subsequent appearances that "continued detention is necessary").

¶ 26    On March 5, 2025, the same day as the hearing, defendant filed a "Notice of Appeal From Pretrial Detention or Release Order Pursuant to Illinois Supreme Court Rule 604(h)." With respect to the dispositions appealed, the notice stated: "initial: 6-11-25; request for release: 12-10-25; motion for relief: 3-5-26."

¶ 27    On May 5, 2026, defendant exercised his right under the amended Rule 604(h) to not file an appellate brief and to stand on the proceedings below. Rule 604(h) was amended to provide that "[t]he motion for relief will serve as the argument of the appellant on appeal." Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). "Issues raised in the motion for relief are before the appellate court regardless of whether the [defendant's] optional [appellate] memorandum is filed." Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). Instead of filing a memo, defendant filed a "Notice in Lieu of Rule 604(h) Memorandum," which stated that he "elect[ed] to stand" on the arguments he made "in the Motion for Relief." The State filed its timely appellate memo within 21 days after defendant's optional memo was due. Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) (the State may file an appellate memo "within 21 days of the time for filing" the defendant's memo). This accelerated appeal followed.

¶ 28                                    II. ANALYSIS

¶ 29    For the following reasons, we exercise *de novo* review and affirm the trial court's denial of pretrial release.

¶ 30                              A. Standard of Review

¶ 31    Regarding the standard of review, our supreme court has held that,

"when live witness testimony is presented at a pretrial detention hearing, the circuit court's ultimate detention decision under section 110-6.1 [(725 ILCS 5/110-6.1 (West 2022))], in addition to any underlying factual findings supporting the decision, will not

be disturbed on review unless found to be contrary to the manifest weight of the evidence." *Morgan*, 2025 IL 130626, ¶ 54.

¶ 32    However, "when the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *Morgan*, 2025 IL 130626, ¶ 54. The supreme court stated that *de novo* review means that the reviewing court "grant[s] no deference to the decision of the circuit court." *Morgan*, 2025 IL 130626, ¶ 22. The supreme court stressed that "the reviewing court stands in the same position as the circuit court." *Morgan*, 2025 IL 130626, ¶ 21.

¶ 33    In the case at bar, since no live witness testimony was presented, our standard of review is *de novo*, and we stand in the same position as the trial court when reviewing the record.

¶ 34              B. Defendant's Motion for Relief

¶ 35    To the extent that the State argues that defendant failed to satisfy a rule-required prerequisite, our task is one of rule interpretation, and our review on this question is also *de novo*. *Johansson v. Glink*, 2021 IL App (1st) 210297, ¶ 39 ("Since interpretation of a supreme court rule presents purely a question of law, our review is *de novo*."); *VC&M, Ltd. v. Andrews*, 2013 IL 114445, ¶ 13.

¶ 36    Since absence of the prerequisite would require dismissal of the appeal (see *People v. Patterson*, 2025 IL App (1st) 250510, ¶ 24), we examine this question first, before proceeding to the merits. *Patterson*, 2025 IL App (1st) 250510, ¶¶ 1-2 (we considered compliance with the prerequisite before considering the merits of the appeal). We observe that the State did not raise before the trial court its claim that defendant's motion did not qualify as a valid motion for relief. However, the fact that the State failed to raise this issue below does not affect our

need to consider it on appeal. A party cannot waive or forfeit a limit that the supreme court has placed on the appellate court.

¶ 37    When interpreting a supreme court rule, we are governed by the same rules that govern statutory interpretation. *Johansson*, 2021 IL App (1st) 210297, ¶ 40; *VC&M*, 2013 IL 114445, ¶ 30. Under those rules, our primary objective is to ascertain and give effect to the intent of the rule's drafters. *Johansson*, 2021 IL App (1st) 210297, ¶ 40; *VC&M*, 2013 IL 114445, ¶ 30. The best indicator of the drafters' intent is the language that they chose to use in the rule itself, which should be given its plain and ordinary meaning. *Johansson*, 2021 IL App (1st) 210297, ¶ 40; *VC&M*, 2013 IL 114445, ¶ 30. Only if their words are ambiguous or susceptible to more than one meaning do we look to other interpretative aids. *Johansson*, 2021 IL App (1st) 210297, ¶ 40.

¶ 38    The subsection entitled "Motion for Relief" provides in its entirety:

"(2) *Motion for Relief.* As a prerequisite to appeal, the party taking the appeal shall first present to the trial court a written motion requesting the same relief to be sought on appeal and the grounds for such relief. The trial court shall promptly hear and decide the motion for relief. Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived." Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024).

¶ 39    The State argues that, although defendant's motion was captioned appropriately and cited the correct rule, it is not the caption that governs our inquiry. Generally, the character of a motion is determined from its content, not its caption. *Johansson*, 2021 IL App (1st) 210297, ¶ 45. However, regarding this particular subsection, this court has found that, "if [the motion] invoked Rule 604 or in any other way gave us some indication" that it was a motion for relief,

- 13 -

"we would liberally interpret it as a motion for relief." *Patterson*, 2025 IL App (1st) 250510, ¶ 20.

¶ 40     Regarding the content of the motion, the rule's description is very brief. The plain language of the rule requires only that the motion request the "relief to be sought on appeal" and list "the grounds for such relief." Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). Since we exercise *de novo* review and perform the same exact task as the trial court (*Morgan*, 2025 IL 130626, ¶¶ 21-22), the grounds below and the grounds before us may be exactly the same. When the parties proceed solely by proffer, as they did here, the reviewing court is not bound by the trial court's factual findings and may conduct its own independent *de novo* review of the documents and proffered facts. *Morgan*, 2025 IL 130626, ¶ 54

¶ 41     Nonetheless, the State argues that defendant's motion was not a motion for relief but a motion for reconsideration. However, we have previously found that the purpose of "[t]his type of motion," *i.e.*, a motion of relief, *is* to "ask[ ] the trial court to reconsider a prior denial of pretrial release." *People v. Opas*, 2025 IL App (1st) 250208, ¶ 1; *People v. Reyes*, 2026 IL App (1st) 252639, ¶ 1; *People v. Lanier*, 2025 IL App (1st) 242603, ¶ 1; *People v. Hugo*, 2024 IL App (1st) 241983-U, ¶ 1 (affirming "the trial court's order denying defendant's motion to reconsider"). On appeal, what we review is the "circuit court's ultimate detention decision." *Morgan*, 2025 IL 130626, ¶ 1.

¶ 42     To argue that the motion here was insufficient, the State relies primarily on *Patterson*, 2025 IL App (1st) 250510, ¶ 1, where we found that the prerequisite was not satisfied. However, *Patterson* is nothing like our case. In *Patterson*, the original detention order was filed in 2023. *Patterson*, 2025 IL App (1st) 250510, ¶ 5. A full year and a half later, the defendant filed his initial "Petition for Pretrial Detention Relief." *Patterson*, 2025 IL App (1st)

250510, ¶ 6. At the start of the hearing on the petition, the trial court specifically asked whether this was " 'a motion for appellate purposes,' " and the defense counsel said it was not. *Patterson*, 2025 IL App (1st) 250510, ¶ 7. After the trial court denied the petition, the court instructed counsel that he would have to file a motion before filing an appeal. *Patterson*, 2025 IL App (1st) 250510, ¶ 17. However, despite the court's warning, counsel filed a Rule 604(h) notice of appeal, without filing a motion for relief first. *Patterson*, 2025 IL App (1st) 250510, ¶ 8. On appeal, the State sought dismissal on the ground that no motion for relief had been filed. *Patterson*, 2025 IL App (1st) 250510, ¶ 9. We agreed, finding there was no way to construe the petition as such a motion on these facts, given counsel's representation that it was not such a motion, the trial court's clarification before the hearing that this was not such a motion, and the court's admonishment after the hearing to file such a motion, and the fact that the petition failed to "invoke[ ] Rule 604 or in any other way g[i]ve us some indication" that it was a motion for relief. *Patterson*, 2025 IL App (1st) 250510, ¶¶ 14, 17, 20.

¶ 43     By contrast, in the case at bar, the trial court informed defendant at the end of the December 10, 2025, hearing that he would have to file a written motion—and he did so. The subsequently filed motion was titled "Motion for Relief Under the Pretrial Fairness Act," and the defense repeatedly stated that the motion was, in fact, a motion for relief. The motion stated all the grounds that are before us on appeal, including defendant's youth, single parenthood, lifetime residence in Chicago, enrollment in trade school, no adult convictions, supportive letters from family, pastor, and juvenile counselor, and the inability of one of the two victims to make a positive identification. The motion even included new information, namely, the

exonerating nature of the recently produced DNA test.[3] At the end of the March 2026 hearing, the trial court asked, "Where do we stand now?" and the APD replied that she would now "seek leave to file our notice of appeal." The trial court said okay, with no objection from the State. To argue that this was not a motion for relief is absurd.

¶ 44    To the extent that the argument is that it cannot be a motion for relief because it was filed three months later, Rule 604(h) contains no time limit for filing the motion for relief and provides that the defendant may initiate an appeal "at any time prior to conviction." Ill. S. Ct. R. 604(h)(2), (3) (eff. Apr. 15, 2024). In addition, none of the delays appear due to the defense. The APD explained that she had been waiting to receive a transcript of the last detention hearing before she could file a motion to reconsider its result. Further, the defense waited eight months for testing to be completed by the State. Although the rule does not appear to require it, the defense acted promptly in filing its motion for relief.

¶ 45    For all these reasons, we do not find persuasive the State's argument that this was not a valid motion for relief. Having found the prerequisite satisfied, we now turn to the merits of defendant's appeal.

¶ 46                          C. The Three Questions

¶ 47    When a defendant has been charged with a detainable offense, and the State has filed a petition for pretrial detention, the court must "make a factual determination as to whether the State presented clear and convincing proof that (1) the defendant likely committed the detention-eligible offense, (2) the defendant is dangerous, and (3) no conditions could mitigate defendant's dangerousness or risk of flight." *Morgan*, 2025 IL 130626, ¶ 41; 725 ILCS 5/110-

---

[3]On appeal, the State argues that the DNA evidence goes only to the strength of the government's case against defendant; however, that argument overlooks the exonerating nature of the evidence for the defense.

6.1(e) (West 2024). If the answer to these three questions is " 'yes,' the court may detain the defendant." *Morgan*, 2025 IL 130626, ¶ 41. All defendants are "presumed eligible for pretrial release," and so it is the State that bears the burden of overcoming this presumption. 725 ILCS 5/110-6.1(e) (West 2024).

¶ 48    To quote the statute, the State must satisfy three factors "by clear and convincing evidence": (1) that "the proof is evident or the presumption great that the defendant has committed" the charged offense; (2) that the defendant "poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case"; and (3) that "no condition or combination of conditions *** can mitigate" either the risk of the defendant's "real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" or the risk of his "willful flight." 725 ILCS 5/110-6.1(e)(1)-(3) (West 2024). The court may consider a variety of factors in making a determination of dangerousness, which may include, but are not limited to, the nature and circumstances of the charged offense, the history and characteristics of the defendant, and "[w]hether the defendant is known to possess or have access to any weapon or weapons." 725 ILCS 5/110-6.1(g)(1)-(2), (7) (West 2024). Now that we must undertake the same review as the trial court, these statutory requirements and factors apply equally to the appellate court. *Reyes*, 2026 IL App (1st) 252639, ¶ 49; *Opas*, 2025 IL App (1st) 250208, ¶ 37; *Lanier*, 2025 IL App (1st) 242603, ¶ 56.

¶ 49    To satisfy its burden, the State "may present evidence at the hearing by way of proffer based upon reliable information." 725 ILCS 5/110-6.1(f)(2) (West 2024); *Morgan*, 2025 IL 130626, ¶ 26. Similarly, the defendant may counter with evidence by way of proffer. 725 ILCS 5/110-6.1(f)(2) (West 2024).

¶ 50                              D. The Three Factors

¶ 51                                1. Proof Evident

¶ 52        First, exercising *de novo* review, we find that the State tendered proffers at the hearings that established "by clear and convincing evidence" that "the proof is evident or the presumption great that the defendant has committed" the charged offenses (725 ILCS 5/110-6.1(e)(1) (West 2024)).

¶ 53        As a preliminary observation, we note that the State argues that the helicopter footage shows defendant tossing a firearm, while the defense, who presumably watched the same footage, asserts that the object thrown does not look like a firearm. Since the helicopter footage is not in the record before us, we choose not to rely on this fact.

¶ 54        Arguing that the presumption is not great, the defense notes, among other things, (1) that one victim could not definitively identify defendant, (2) that the police did not have continuous observation of the Dodge after the initial hijacking, (3) that there were no admissions by defendant and no gun, holster, or ammunition recovered on his person, and (4) that the DNA evidence was exonerating. Since no fingerprint testing was done, there were no fingerprints recovered from any items, including the gun or the car. The offenders wore masks covering most of their faces, and the record does not disclose the circumstances of the identification. Further, if two offenders exited the car at some point, so could have three.

¶ 55        However, despite the fact that the forensic evidence excluded defendant from the DNA on the recovered gun and the other facts noted above, the presumption is still great that defendant committed the offense, based on defendant's high-speed flight in the hijacked vehicle as recorded by helicopter footage less than 10 minutes after the hijacking, defendant's tossing away an object during his flight on foot, his arrest while hiding in a staircase that was

not on his own property, and the identification of him from a photo array by the victim who had stood closest to him during the offense.

¶ 56     Therefore, for purposes of today's review, this point is satisfied. We hasten to add that this finding has no effect, whatsoever, on what might later be proven at a trial and found by a fact finder.

¶ 57                                    2. Dangerousness

¶ 58     Next, exercising *de novo* review, we find that the State tendered proffers at the hearings that established "by clear and convincing evidence" that the defendant "poses a real and present threat to the safety of \*\*\* the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(e) (West 2024). Although we exercise *de novo* review, we find ourselves in agreement with all three trial court rulings that found that defendant poses a danger to the community.

¶ 59     Arguing against a finding of dangerousness, the defense notes defendant's youth, single parenthood, lifetime residence in Chicago, high school degree, enrollment in trade school, no adult convictions, supportive letters from his sister, pastor, and juvenile counselor, and his wellness-checks on his grandfather with dementia. However, defendant's demonstrated care for his family and friends, and their reciprocal support of him, do nothing to lessen the threat that he poses to the rest of the community. There is simply no getting around the fact that, at the very young age of 20, defendant already has 10 adjudications for violent offenses, including numerous guilty pleas to offenses with guns. Thus, we find the dangerousness factor satisfied.

¶ 60                                    3. No Conditions

¶ 61     Finally, exercising *de novo* review, we find that the State tendered proffers at the hearings that established "by clear and convincing evidence" that "no condition or combination

of conditions *** can mitigate" the risk of the defendant's "real and present threat to the safety of *** the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(e) (West 2024).

¶ 62      There is no condition or combination of conditions that could mitigate the risk here where—as both trial judges found and we agree—defendant does not appear to be one who is willing to abide by conditions, considering his history of repeatedly committing aggravated vehicular hijackings and armed robberies. Only three months elapsed since defendant was discharged from juvenile parole, when he was arrested for the instant offense. The trial court observed that, with all these adjudications, there had to have been "multiple times" when defendant was "told not to commit an offense, not to carry a firearm, and yet," here we are "again ** with a very serious violent offense." In addition, the ASA noted at a hearing,

> "Electronic monitoring is reactive; it is not proactive. They are not a law enforcement agency. [A]ll they would be able to do, days after the event, would be to inform the Court."

In light of defendant's repeated commission of violent offenses and the inability of electronic monitoring to proactively stop offenses from happening, we find no condition or combination of conditions that could protect the public.

¶ 63      Having considered all three questions separately and independently, we find that the answer to all three is "yes." See *Morgan*, 2025 IL 130626, ¶ 41 (if the answer to these three questions is " 'yes,' the court may detain the defendant").

¶ 64      III. CONCLUSION

¶ 65      For all the foregoing reasons and having conducted a thorough *de novo* review of the record before us, we find, first, that defendant satisfied the prerequisite of filing a motion of

relief and, second, that the trial court did not err in denying him pretrial release. Thus, we affirm the trial court's orders denying defendant's petition for release and motion for relief and affirm the trial court's grant of the State's petition for pretrial detention.

¶ 66        Affirmed.

*People v. Talbert*, **2026 IL App (1st) 260489**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 25-CR-7788; the Hon. Charles P. Burns, Judge, presiding. |
| **Attorneys for Appellant:** | Sharone R. Mitchell Jr., Public Defender, of Chicago (Ashley DeVeaux, Assistant Public Defender, of counsel), for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (Karen Kerbis, Special Assistant State's Attorney, of counsel), for the People. |